## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

C.A. No.: 1:25-cv-11518-BEM

VITA LAW OFFICES, P.C.,

       Plaintiff,

v.

LOCKRIDGE GRINDAL NAUEN
P.L.L.P. and HEIDI M. SILTON, ESQ.,

       Defendants.

### PLAINTIFF COUNSEL'S RESPONSE TO ORDER TO SHOW CAUSE (ECF NO. 23)

      Plaintiff Vita Law Offices, P.C. ("Plaintiff" or "Vita"), through its counsel Christopher M. Cervantes, respectfully submits this response to the Court's Order to Show Cause dated July 1, 2025 (Dkt. 23). Counsel acknowledges the seriousness of the issues raised and expresses sincere regret for the inaccuracies in its briefs. First and foremost, counsel wishes to apologize to both the Court and the defendants and their counsel. These errors were unintentional, resulting from the inadvertent alteration of quoted language during the use of an automated editing tool for grammar and syntax refinement. As detailed below, Plaintiff has conducted a thorough review of all briefs submitted in this action, identified all instances of inaccurate quotations, and provides explanation for how they occurred. Plaintiff respectfully requests that the Court decline to issue sanctions, as these errors do not involve fabricated cases or intentional misconduct, distinguish from cases imposing sanctions for AI-generated "hallucinations," and Plaintiff has taken immediate remedial steps to prevent recurrence.

      This response is supported by the attached Declaration of Christopher M. Cervantes (Exhibit A).

1

## I. LIST OF INACCURATE QUOTATIONS AND CITATIONS

Pursuant to the Court's directive, Plaintiff has reviewed all briefs submitted in this action, including Documents 12 (Motion for Leave to File Response, filed May 30, 2025), 14 (Response to Defendants' Submission, filed June 4, 2025), 14-1 (Memorandum in Support, filed June 4, 2025), 16 (Motion to Strike, filed June 4, 2025), and 20 (Sur-Reply, filed June 11, 2025). These filings contain a total of two hundred twenty-six (226) citations to cases or statutes, all of which refer to real authorities – no fake cases were cited. However, out of forty-four (44) quotations or partial quotations, thirteen (13) instances across two documents (Dkt. 14-1 and Dkt. 20) involve inaccuracies where the quoted language could not be verified as appearing verbatim in the cited sources. These errors pertain to two cases: *Carden v. Arkoma Associates*, 494 U.S. 185 (1990), and *EQT Production Co. v. Vorys, Sater, Seymour & Pease, LLP*, No. 6:15-cv-146, 2018 WL 6786065 (E.D. Ky. Dec. 26, 2018). No other inaccuracies, such as misrepresentations of holdings or factual assertions, were identified.

The inaccuracies are summarized in the table below, which includes the document, page, cited case, nature of the error, and verification status:

| Document | Page | Case Cited | Citation Verified | Quote Used | Quote Verified | Analysis |
|---|---|---|---|---|---|---|
| 14-1 (Memorandum) | 10 | *EQT Prod. Co. v. Vorys*, 2018 WL 6786065 at *7 | Yes | Partial: "mini-trials" | No | Paraphrase/summarization, not verbatim. |
| 14-1 (Memorandum) | 11 | *EQT Prod. Co. v. Vorys*, | Yes | Partial: "jurisdictional gamesmanship" | No | Paraphrase/summarization, not verbatim. |

| Document | Page | Case Cited | Citation Verified | Quote Used | Quote Verified | Analysis |
|---|---|---|---|---|---|---|
| | | 2018 WL 6786065 at *7 | | | | |
| 14-1 (Memorandum) | 14 | *EQT Prod. Co. v. Vorys*, 2018 WL 6786065 at *7 | Yes | Partial: "jurisdictional gamesmanship," "erode the clarity and simplicity" | No | Paraphrase/summarization, not verbatim. |
| 14-1 (Memorandum) | 16 | *Carden v. Arkoma Assocs.*, 494 U.S. at 197 | Yes | Partial: "predictability and judicial efficiency in the determination of diversity jurisdiction" | No | Summarization of holding, not verbatim. |
| 14-1 (Memorandum) | 16 | *EQT Prod. Co. v. Vorys*, 2018 WL 6786065 at *7 | Yes | Partial: "gamesmanship and jurisdictional manipulation" | No | Paraphrase/summarization, not verbatim. |
| 20 (Sur-Reply) | 3 | *EQT Prod. Co. v. Vorys*, 2018 WL 6786065 at *3 | Yes | Partial: "The Court finds that the citizenship of non-equity partners must be considered in determining the citizenship of an LLP for diversity purposes" | No | Paraphrase/summarization, not verbatim. |
| 20 (Sur-Reply) | 4 | *EQT Prod. Co. v. Vorys*, 2018 WL | Yes | Partial: "the citizenship of non-equity partners must be considered in determining the | No | Paraphrase/summarization, not verbatim. |

| Document | Page | Case Cited | Citation Verified | Quote Used | Quote Verified | Analysis |
|---|---|---|---|---|---|---|
| | | 6786065 at *3 | | citizenship of an LLP for diversity purposes" | | |
| 20 (Sur-Reply) | 5 | *Carden v. Arkoma Assocs.*, 494 U.S. at 196 | Yes | Partial: "the relevant inquiry is not whether state law recognizes a particular individual as a partner, but rather whether that individual is a member of the unincorporated association for purposes of federal jurisdiction" | No | Paraphrase/summarization, not verbatim. |
| 20 (Sur-Reply) | 5 | *Carden v. Arkoma Assocs.*, 494 U.S. at 197 | Yes | Partial: "litigation-driven reassessments of an entity's internal structure" | No | Paraphrase/summarization, not verbatim. |
| 20 (Sur-Reply) | 8 | *Carden v. Arkoma Assocs.*, 494 U.S. at 196 | Yes | Partial: "the relevant inquiry is not whether state law recognizes a particular individual as a partner, but rather whether that individual is a member of the unincorporated association for purposes of federal jurisdiction" | No | Paraphrase/summarization, not verbatim. |

| Document | Page | Case Cited | Citation Verified | Quote Used | Quote Verified | Analysis |
|---|---|---|---|---|---|---|
| 20 (Sur-Reply) | 8 | *EQT Prod. Co. v. Vorys*, 2018 WL 6786065 at *7 | Yes | Partial: "jurisdictional gamesmanship" | No | Paraphrase/summarization, not verbatim. |
| 20 (Sur-Reply) | 9 | *Carden v. Arkoma Assocs.*, 494 U.S. at 197 | Yes | Partial: "litigation-driven reassessments of an entity's internal structure" | No | Paraphrase/summarization, not verbatim. |
| 20 (Sur-Reply) | 9 | *EQT Prod. Co. v. Vorys*, 2018 WL 6786065 at *7 | Yes | Partial: "erode the clarity and simplicity," "jurisdictional gamesmanship" | No | Paraphrase/summarization, not verbatim. |

## II. EXPLANATION OF HOW THE INACCURACIES OCCURRED

As detailed in the attached Declaration of Christopher M. Cervantes (Exhibit A), the inaccuracies resulted from the inadvertent use of Microsoft Copilot, an AI-assisted editing tool embedded in Microsoft Word via Plaintiff's Microsoft 365 subscription. This tool was employed solely for non-substantive tasks, such as refining grammar, syntax, tone, and paragraph structure during the drafting process. At no point was Copilot or *any* AI tool used for legal research, generating arguments, or creating citations – these were performed manually by counsel.

In early 2025, following a software update, Copilot became integrated directly into the application in counsel's office, specifically in Microsoft Word, offering automated suggestions for rewording and editing. Counsel used these features to polish drafts, believing them to be akin

to traditional spell-check or grammar tools. However, in rewording paragraphs containing quoted material, Copilot appears to have altered the language of certain quotes while preserving quotation marks and formatting, resulting in non-verbatim representations. These changes went undetected during final review. Important for context, these alterations do not appear to contradict the overall legal analysis or holdings cited; nevertheless, they were erroneously attributed.

This explanation applies uniformly to all thirteen (13) identified instances, which occurred in Dkt. 14-1 (filed June 4, 2025) and Dkt. 20 (filed June 11, 2025). Counsel deeply regrets this oversight and has implemented immediate remedial measures, including prohibiting AI tools for court filings, requiring manual verification of all quotes, and exploring options to disable Copilot's rewriting functions in Microsoft Word (Exhibit A, ¶¶ 19-21).

## III. COUNSEL IS DEEPLY EMBARRASED AND REGRETFUL AND PRAYS THAT THE COURT SHOW LENIENCY IN LIGHT OF THE UNINTENTIONAL NATURE OF THESE ERRORS.

Counsel prays respectfully that this Court would *not* issue sanctions, as the inaccuracies stem from an unintentional editing error during grammar refinement, not from bad faith, fabricated cases, or AI "hallucinations" (i.e., generating nonexistent authorities). Federal Rule of Civil Procedure 11(b) requires good-faith inquiry and non-frivolous arguments, but courts exercise discretion in imposing sanctions, considering intent, remedial actions, and the nature of the error.

### A. No Intent to Deceive or Bad Faith

The errors were inadvertent, arising from reliance on an editing tool for grammatical improvements, not from deliberate misrepresentation. Counsel conducted independent legal research and drafted arguments manually, using Copilot only for post-draft polishing (Exhibit A,

6

¶¶ 9-18). Unlike cases involving sanctions, there was no knowledge or recklessness—counsel believed the tool functioned like standard grammar checkers. This distinguishes from bad-faith scenarios.

### B. Distinguished from AI "Hallucination" Cases Warranting Sanctions

Courts imposing sanctions for AI misuse typically involve "hallucinations" which generate fake cases or holdings – often during substantive research, not editing. In *Mata v. Avianca*, attorneys used ChatGPT for legal research, submitting six (6) *nonexistent* cases, leading to a $5,000 fine for bad faith. *Mata v. Avianca, Inc.,* No. 22-cv-1461 (PKC) (S.D.N.Y. June 22, 2023)*. Similarly, in *Park v. Kim*, Case No. 22-2057 (2d Cir. Jan. 30, 2024), sanctions followed submission of AI-generated fake citations. In *Lacey v. State Farm General Ins. Co.,* 2025 WL 1363069 (C.D. Cal. May 5, 2025), plaintiff submitted a filing with erroneous AI-generated citations.  The Special Master pointed out some of them and allowed the plaintiff an opportunity to resubmit a corrected filing; however, that second submittal still contained erroneous citations. The Special Master wrote, "I therefore conclude that (a) the initial undisclosed use of AI, (b) the failure to cite-check the Original Brief, and (perhaps most egregiously), (c) the re-submission of the defective Revised Brief without adequate disclosure of the use of AI, taken together, demonstrate *reckless* conduct with the improper purpose of trying to influence my analysis of the disputed privilege issues." *Id.* (emphasis added).

These cases underscore the severity of citing nonexistent cases, a contrast to the present situation where all 226 citations are real, and the errors limited to altered wording in thirteen (13) quotes or partial-quotes from valid authorities, namely *Carden v. Arkoma Associates*, 494 U.S. 185 (1990), and *EQT Production Co. v. Vorys, Sater, Seymour & Pease, LLP*, No. 6:15-cv-146, 2018 WL 6786065 (E.D. Ky. Dec. 26, 2018). The cases where sanctions were imposed involve

deliberate or reckless reliance on AI for substantive content, unlike Counsel's limited use of Copilot for grammar edits. In counsel's review of instances where sanctions, fines or costs were imposed, it appears that all of them involved "hallucinated" case cites (cases that do not exist and are used to purport and support an argument before the Court). In this instance, Counsel's use of the quote, while erroneous, was cited to an actual case, and a case that in fact did support the arguments being raised to this Court. Counsel prays that this Court would show leniency in absence of fake citations and the unintentional nature of the errors and not impose sanctions on Counsel.

### C. Remedial Actions and Commitment to Prevention

Counsel has taken swift corrective steps: a full review of filings, prohibition of AI in court documents, mandatory manual quote verification, and exploration of disabling Copilot (Exhibit A, ¶¶ 19-21). These measures demonstrate good faith and align with factors favoring leniency. Counsel has no prior disciplinary record and 10 years of practice, primarily in litigation and trial practice, without similar issues further support the non-issuance of sanctions (Exhibit A, ¶¶ 4-5).

Imposing sanctions would be disproportionate, as the errors did not prejudice Defendants or mislead the Court on substantive law and Counsel has shown remorse and taken remedial measures.

### IV. CONCLUSION

Counsel regrets these unintentional errors and reaffirms his commitment to candor. The inaccuracies resulted from an editing tool's alterations during post draft polishing, not hallucinations or bad faith. Distinguished from sanction cases, and with remedial actions in

place, Plaintiff respectfully requests the Court decline to issue sanctions and discharge the Order

to Show Cause.

Respectfully submitted,

VITA LAW OFFICES, P.C.,
Plaintiff,
By its attorney,

*/s/ Christopher M. Cervantes*
Christopher M. Cervantes, BBO# 694813
Cervantes Law, P.C.
100 State Street, Suite 900
Boston, MA 02109
Tel: (617) 997-4435
Email: CMC@CCervantesLaw.com

Dated: July 14, 2025


## CERTIFICATE OF SERVICE

I certify that on July 14, 2025, this document was filed through the CM/ECF system, which will
send notification to all counsel of record, and paper copies will be sent to non-registered
participants.

*/s/ Christopher M. Cervantes*