# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. No.: 1:25-cv-11518-BEM

VITA LAW OFFICES, P.C.,

    Plaintiff,

v.

LOCKRIDGE GRINDAL NAUEN
P.L.L.P. and HEIDI M. SILTON, ESQ.,

    Defendants.

## DECLARATION OF CHRISTOPHER M. CERVANTES

I, Christopher M. Cervantes, declare as follows:

1.    I am Christopher M. Cervantes, an attorney and counselor at law, and a member in good standing of the Bar of the Massachusetts Supreme Judicial Court, the Supreme Court of Texas, and of this Honorable Court, with a Board of Bar Overseers Number of 694813. I have no disciplinary record or remands – either private or public – in any jurisdiction I have been admitted to practice in.

2.    I am the principal attorney and founder of Cervantes Law, P.C. which is located at 100 State Street, Suite 900, Boston, Massachusetts 02109.

3.    I submit this declaration in response to the Court's July 1, 2025, Order to Show Cause (Docket Number: 23).

4.    I have practiced law for approximately ten (10) years. During my practice as an attorney, I performed substantive legal work on an estimated one thousand (1,000) cases and have served as lead counsel on approximately two hundred (200) matters which were litigated

and handled by myself from inception of the action's filing to final disposition – many which were tried before a jury.

5. In the course of my practice as an attorney and amongst the various courts and tribunals where I am admitted to practice, I have never been the subject of judicial inquiry or sanction related to truthfulness and/or candor, filing, citation or quotation before a court or tribunal.

6. I was retained by Plaintiff in this matter to prosecute its claim for the relief sought as outlined in Plaintiff's Complaint as filed in the Suffolk County Superior Court.

7. On July 1, 2025, it was brought to my attention by this Honorable Court, through its Order to Show Cause (Dkt. No. 20), that there existed at least two quotations in plaintiff's sur-reply which were not present in *Carden v. Akroma Associates*, 494 U.S. 185 (1990), and were erroneously attributed as direct quotes.

8. Upon receipt of the Court's Order, my office and I undertook a comprehensive review of all prior filings submitted by the Plaintiff in this case to determine how the quotations were erroneously presented in Plaintiff's filing.

9. I attest that I personally spent approximately twenty-two (22) hours on legal research, drafting and case analysis in connection with these filings and more specifically related to submissions addressing the subject matter jurisdiction issue. This time included detailed review of the relevant precedent, interpretation and written argument development in response to the Defendants' filings.

10. In Plaintiff's filings, specifically Documents: 12, 14, 14-1, 16, and 20, Plaintiff cites to either a case or statute two hundred twenty-six times (226). Of those two-hundred twenty-six citations, *all* are verified as actual cases or citations, and there exist no "fake case[s]".

11. In plaintiff's filings, specifically Documents: 12, 14, 14-1, 16, and 20, Plaintiff quoted or partially quoted the above mentions citations forty-four times. Of those quotes, Plaintiff discovered errors on fourteen (14) occurrences when citing to two (2) cases, specifically, *Carden v. Arkoma Associates*, 494 U.S. 185 (1990) and *EQT Prod. Co. v. Vorys et. al.* No. 6:15-cv-146, 2018 WL 6786065 at 7 (E.D. Ky. Dec. 26, 2018). These errors exist in the form of being unable to verify the quote or partial quote and are present in Documents Number 14-1 and 20. Specifically: Dkt. 14-1 at 10, 11, 14, 16 and 16 and on Dkt. 20 at 3, 4, 5, 8 and 9.

12. Subsequent to identifying these erroneous quotations I conducted further review to determine how these quotations were erroneously present in Plaintiff's filing.

13. In the previous year, my office migrated to the 'Microsoft 365' platform. Subsequent to that migration, my office subscribed and purchased a license to Microsoft's "Copilot" which is touted as an assistant using AI (artificial intelligence) which is accessed as a chat and accessed through the user's web browser. The tool assists the user in various tasks by responding to the user's prompts to help analyze data, automate tasks, and collaborate with co-workers.

14. Neither myself nor my staff would use the browser-based "chat" AI tool to draft pleadings or filings with the Court.

15. At some point in 2025 – after diligent attempts to recollect it appears to be January or February of 2025 – my office's 'Office' applications (e.g., Word, Excel, Outlook) updated and embedded the tool within the applications themselves. What this meant was that the user no longer needed to go through a web browser to access the tool but instead the tool was embedded into the application and through visual prompts would offer its 'assistance' to the user in various forms.

16. Subsequent to that update I did use the tool to assist in grammar and to provide suggestions on the structure of a paragraph. In Word, specifically, the tool can be used to reword paragraphs, enhance grammar and syntax, and strengthen tone.

17. After completing this review, I concluded that the explanation for the misquotations was the use of the tool integrated into Microsoft Word through our Microsoft 365 subscription. At various stages in the drafting process, I used the tool to assist with refining language, improving tone, and checking grammatical flow. While the cited cases themselves were valid and properly cited, I have concluded that Copilot, in the course of rewording or restructuring certain paragraphs, must have inadvertently altered the language of some quotations while retaining quotation formatting.

18. These edits occurred *without* my awareness and were not detected prior to filing. Based on how the tool operates, and the timing and location of the errors, I concluded that its embedded editing features played a direct role in modifying the quoted language in a way that caused the misattribution.

19. First and foremost, I apologize to both this Court and to the defendants, and their counsel. I am fully aware of the duty of diligence and candor that every attorney owes to the Court under both Rule 11 and the applicable rules of Professional Conduct. That duty includes the responsibility to ensure that all representations made to this Court are accurate and correctly cited.

20. At no time did I deliberately or intentionally seek to mislead the Court, the defendants or their counsel. The errors identified were unintentional and the result of relying on an automated drafting tool without sufficient post-editing verification. I deeply regret the oversight. To prevent this from recurring, I have implemented new internal procedures

forbidding the use of *any* AI tool in the use of filings with any Court or tribunal. I have also implemented a practice of manually verifying all quoted or cited material. My office will also research if the tool and/or its rewriting function can be disabled. I remain committed to full candor and diligence before this Court. In my tenure as a practicing attorney, I have never been in this situation and pray that this is the first and last time.

21. I am both regretful and embarrassed that in this instance I failed to exercise sufficient diligence in reviewing my final drafts and associated filings before submission. While I did not rely on the tool to conduct the legal research or draft the legal arguments themselves, I acknowledge that ultimately, it is my responsibility as the attorney of record and filer to verify the accuracy prior to its submission. I acknowledge that responsibility lies with me and not with any tool or software.

I declare that under the penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on July 14, 2025.

*/s/ Christopher M. Cervantes*
Christopher M. Cervantes