# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

C.A. No.: 1:25-cv-11518-BEM

---

VITA LAW OFFICES, P.C.,

      Plaintiff,

v.

LOCKRIDGE GRINDAL NAUEN
P.L.L.P. and HEIDI M. SILTON,
ESQ.,

      Defendants.

---

## PLAINTIFF, VITA LAW OFFICES, P.C.'S OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER AND FOR SANCTIONS (ECF NO. 7)

# TABLE OF CONTENTS

I. Introduction ...................................................................................................1

II. Brief background ..........................................................................................3

   A. The Referral Fee Agreement and Underlying Litigation .........................3

   B. Procedural History and Defendant's Motion to Transfer ........................4

III. The referral fee agreement is a separate contract not subject to the florida court's retained jurisdiction ................................................................6

   A. The Scope of the Florida Court's Jurisdiction. .......................................7

   B. There exists a distinction between referral fees and allocations. ...............7

   C. If Defendants considered Vita's claims as 'fee allocation' they were obligated to disclose it to the Southern District of Florida. ................................9

IV. Defendants' further arguments for transfer are unavailing ...........10

   A. Interest of Justice Does Not Favor Transfer ...........................................12

   B. Convenience Factors Do Not Favor Transfer to Florida.........................16

V. Defendants' request for costs for removal and transfer proceedings is without merit ...............................................................................................17

   A. Standard for Sanctions Under §1927 ......................................................18

   B. Plaintiff's actions were reasonable and in good faith. .............................18

VI. Conclusion ..................................................................................................19

# TABLE OF AUTHORITIES

**Cases**

*Andujar v. Gen. Nutrition Corp.*, No. CV 14-7696 (JS), 2018 WL 3999569, (D.N.J. Aug. 20, 2018). ................................................................................................... 7

*Atlantic Marine Constr. Co. v. United States* Dist. Court for W. Dist. of Tex., 571 U.S. 49, 54, 134 S. Ct. 568, 187 L. Ed. 2d 487 [*122] (2013) .............................. 10

*Bowler v. U.S. I.N.S.*, 901 F. Supp. 597 (S.D.N.Y. 1995) ......................................... 18

*Brewster Wallcovering Co. v. Blue Mountain Wallcoverings, Inc.*, 68 Mass. App. Ct. 582, 599 n.40, 864 N.E.2d 518, 534 n.40, 62 U.C.C. Rep. Serv. 2d 552 (2007) ...... 13

*BRT Mgmt. LLC v. Malden Storage LLC*, 68 F.4th 691 (1st Cir. 2023) ................. 4, 5

Cruz v. Savage, 896 F.2d 626 (1st Cir. 1990)............................................................. 17

*Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 188 F. Supp. 2d 115 (D. Mass. 2002)..................................................................................................... 14, 15

*Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42 (1st Cir. 2002)....................................................................................................................... 15

*EQT Prod. Co. v. Vorys, Sater, Seymour & Pease, LLP*, No. 6:15-CV-146-REW-EBA, 2018 WL 6790486, at *6 (E.D. Ky. Dec. 26, 2018) ................................................. 18

*Haddad v. Gonzalez,* 410 Mass. 855, 869, 576 N.E.2d 658 (1991) ............................ 12

*Halberg v. W.M. Chanfrau, P.A.*, 613 So. 2d 600, 602 (Fla. Dist. Ct. App. 1993) ..... 14

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 MDL 1529 LMM, 2011 WL 1044156, at *2 (S.D.N.Y. Mar. 16, 2011) .................................................. 8

*In re Libor-Based Fin. Instruments Antitrust Litig.*, No. 12-CV-5822 (NRB), 2020 WL 7121854, at *1 (S.D.N.Y. Oct. 5 .................................................................... 7, 8

*International Fid. Ins. Co. v. Wilson,* 387 Mass. 841, 856, 443 N.E.2d 1308 (1983) .12

*Koster v. Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 524, 67 S.Ct. 828, 91 L.Ed. 1067 (1947) ....................................................................................................................... 11

*Kraft Power Corp. v. Merrill*, 464 Mass. 145, 157, 981 N.E.2d 671, 684 (2013)........ 12

*Kurra v. Synergy Comput. Sols., Inc.*, No. 15-cv-13952-ADB, 2016 U.S. Dist. LEXIS 127248, 2016 WL 5109132, at *7 (D. Mass. Sept. 19, 2016).................................. 10

*McGrath v. Mishara,* 386 Mass. 74, 85, 434 N.E.2d 1215 (1982)............................... 12

*Nowak v. Tak How Invs.*, Ltd., 94 F.3d 708, 718 (1st Cir. 1996) ....................... 11, 14

*Rome v. McNally*, 718 F. Supp. 3d 118 at 121, 122 (D. Mass. 2024).......................... 10

*Saggese v. Kelley*, 445 Mass. 434, 837 N.E.2d 699 (2005) ........................................ 13

*Veryfine Prods., Inc. v. Phlo Corp.*, 124 F. Supp. 2d 16, 21–22 (D. Mass. 2000).. ............................................................................................ 11, 16, 17

*Vita v. Berman, Devalerio & Pease, LLP*, 81 Mass. App. Ct. 748, 967 N.E.2d 1142 (2012) ................................................................................................................ 13

**Statutes**

28 U.S.C. § 1404(a) ................................................................................................ 10

28 U.S.C. § 1927 ........................................................................................... 6, 17, 19

M.G.L. c. 93A ................................................................................................ 5, 12, 13

M.G.L. c. 93A § 11 ................................................................................................... 12

M.G.L.A. c. 259, § 7 ................................................................................................ 13

**Treatises**

Restatement (Second) of Contracts § 202(4) ........................................................ 13

**Other Authorities**

F.S.A Bar Rule 4-1.5 .............................................................................................. 14

Local Civil Rule 23.1 (S.D.N.Y.) .............................................................................. 8

# I.    INTRODUCTION

Plaintiff, Vita Law Offices, P.C., ("Vita" or "Plaintiff") respectfully opposes Defendants Lockridge Grindal Nauen PLLP ("LGN") and Heidi M. Silton, Esq. ("Silton") (collectively "Defendants") Motion seeking this Court order a transfer of this action pursuant to 28 U.S.C. § 1404(a), to the United States District Court for the Southern District of Florida ("Southern District of Florida" or the "Florida Court"). The motion should be denied because Massachusetts is the proper and convenient forum for this dispute, and the interest of justice does not support transfer. Vita, a Massachusetts professional corporation, filed this action in its home forum, Massachusetts, where the referral fee agreement at issue was formed, and where the original plaintiffs in the underlying *Wood Mountain Fish LLC v. Mowi ASA*, No. 19-cv-22128 (S.D. Fla., Feb. 27, 2023) ("Salmon Antitrust Litigation") reside – plaintiffs whom Vita referred from Massachusetts.

Defendants' primary argument – that the Southern District of Florida retained jurisdiction over this dispute through its oversight of fee allocation – is unpersuasive. The referral fee agreement at issue is a separate private contract between Vita and LGN, for which the Florida Court did *not* retain jurisdiction. Indeed, if Silton, in her capacity as co-lead counsel, and on behalf of her firm, LGN, had truly seen Vita's referral fee agreement as a 'fee allocation', they would have been obligated to disclose such an allocation to the Florida Court in the first

instance – which they did *not*.[1] In fact, neither Silton nor Fred T. Isquith, Esq.

("Isquith") – who were both co-lead counsel – disclosed the referral fee agreement to

the Southern District of Florida at *any* time – from the inception of the action up to

the time the dispute arose. Isquith and his former law firm, Wolf Haldenstein Adler

Freeman & Herz LLP ("Wolf Haldenstein") paid a referral fee without disclosure to

the Florida Court, reinforcing that neither co-lead counsel saw this referral fee

arrangement as 'fee allocation' and thus under the Florida Court's jurisdiction.

As such, transfer is not supported and sanctions unwarranted. If the transfer

is denied, Plaintiff respectfully requests the Court set a schedule for Defendants to

respond to the Plaintiff's Complaint.

---

[1] The Defendants may argue that they were not aware of the referral agreement with Vita in order to disclose it to the Florida Court in the first place; however, it is expected that Isquith will testify, as former co-lead counsel, that he discussed the referral fee agreement with Vita and informed Silton of this arrangement before she became co-lead counsel. *See* ECF No. 1-3 at 26. Additionally, upon information and belief, Isquith raised the referral fee agreement with Silton *again* at a settlement conference in the South District of Florida; however, Silton did not inform the Florida Court of the referral fee agreement – whether it was agreed to or not. Additionally, Silton failed to disclose the dispute to the Florida Court at *any* point following Vita's demand for payment of the referral fee. Silton undisputedly knew of the referral fee agreement as early as April 6, 2023, when Vita demanded payment for his agreed upon referral fee and well before the Florida Court granted the parties Motion for Disbursement of Funds on June 24, 2024. *See* ECF No. 362 (Amended Motion for Disbursement of Funds) and ECF No. 363 (Order Granting Motion for Disbursement of Funds) in the Salmon Antitrust Litigation. If Silton believed the referral fee to be a 'fee allocation' and under the jurisdiction of the Southern District of Florida, she would have raised the dispute to the Florida Court.

## II.    BRIEF BACKGROUND

This action arises from a dispute over a referral fee agreement between Vita, a Massachusetts professional corporation and the defendants, LGN, a Minnesota-based law firm, and Silton, an attorney at LGN. Vita seeks to recover fifteen percent (15%) referral fee from LGN's awarded attorneys' fees in the Salmon Antitrust Litigation settled on February 27, 2023, in the Southern District of Florida. Vita played a pivotal role in the success of the litigation by referring the first plaintiff, enabling that client to file the first filed complaint, and later referring a second plaintiff to strengthen the case's posture and enhance the likelihood of settlement. Vita's referral of said plaintiffs and his reliance on LGN's referral fee obligation as a condition to his assent to their motion to be appointed as co-lead counsel with Isquith, is what allowed LGN's recovery of approximately $4,400,000 in fees. Despite an agreement reached prior to referring the clients – confirmed by co-lead counsel Isquith – Defendants have refused to pay the referral fee, prompting Vita to file this action.

### A.    The Referral Fee Agreement and Underlying Litigation

In 2019, Vita referred Wood Mountain Fish LLC, a Massachusetts based entity, to Isquith, then managing senior partner of Wolf Haldenstein, with an agreement that Vita would receive fifteen percent (15%) of the net attorneys' fees from any recovery. This referral allowed counsel to initiate the first-filed complaint in the Salmon Antitrust Litigation. LGN sought inclusion as co-counsel in the matter (notably without any client of their own). Vita, aware that LGN had no client of its own to offer in the litigation, consented to their inclusion on the first

3

filed complaint on the condition that LGN honor the same referral fee agreement. Isquith confirmed that LGN, through Silton, agreed and accepted this condition. *See* ECF No. 1, Plaintiff's Complaint ¶3, 4.

The Salmon Antitrust litigation was filed on May 24, 2019, in the Southern District of Florida and settled for $33,000,000 on February 27, 2023. The Court granted an award of attorneys' fees in the amount of 30% of the gross settlement fund - $9,900,000. *See* Salmon Antitrust Litigation ECF No. 352 at ¶ 15. The Court stated it "hereby retains continuing jurisdiction over the Settlement Agreement for any suit, action, proceeding, or dispute arising out of or relating to this Settlement Agreement or the applicability of the Settlement Agreement, or relating to the award of fees and expenses and any allocation thereof." *Id*. at ¶24. The Court did not state that it retained jurisdiction over disputes relating to referral fee agreements between law firms or independent causes of action stemming from an award of such fees and expenses.

## B.    Procedural History and Defendant's Motion to Transfer

Vita initially filed this action in the District of Massachusetts on April 28, 2025, but voluntarily dismissed it on May 19, 2025, due to concerns about diversity jurisdiction. *See Vita Law Offices, P.C. v. Lockridge Grindal Nauen P.L.L.P. et al.* (Vita I), No. 25-CV-11155 (D. Mass. Apr. 28. 2025). After filing its initial Complaint (Vita I), Vita became aware that the defendants' counsel, Stephen J. Teti, Esq., was a "partner" at LGN's Boston, Massachusetts based office. The First Circuit's decision in *BRT Mgmt. LLC v. Malden Storage LLC*, significantly influenced Vita's

4

decision to voluntarily dismiss its initial action (Vita I) and seek to refile it in Massachusetts Superior Court. BRT Mgmt. LLC v. Malden Storage LLC, 68 F.4th 691 (1st Cir. 2023). In *BRT Mgmt*, the First Circuit vacated a multimillion dollar judgment after *six years* of litigation due to the parties failure to establish complete diversity jurisdiction, highlighting the stringent requirements for determining the citizenship of limited liability companies. The court emphasized that how an entity is classified is relevant to how its citizenship is determined for purposes of diversity jurisdiction, requiring an iterative tracing throughout all layers of membership, and found the defendants' jurisdictional affidavits deficient for omitting critical details about trust members. *Id*. at 696-698. The ruling, well known in the local legal community in Boston, and known to the plaintiff's principal attorney, proved to cause pause proceeding in federal court with a "partner" of LGN based in Boston.

Faced with this precedent, Vita recognized potential jurisdictional vulnerabilities and wished to forgo the jurisdictional gambit and quagmire. To avoid the risk of dismissal after substantial litigation costs, Vita prudently dismissed his complaint (Vita I) and then refiled in Massachusetts Superior Court on May 19, 2025 (*Vita Law Offices, P.C. vs. Lockridge Grindal Nauen P.L.L.P. et al* (Vita II), No. 2584CV01365) where state law claims, including claims under M.G.L. c. 93A, could be adjudicated without risk of the jurisdictional quagmire. Defendants removed the case to this Court on May 28, 2025. *See* ECF No. 1. On that same day, Defendants filed their motion to transfer the case to the Southern District Court of Florida, arguing that the Florida Court retained jurisdiction over this referral fee

dispute from the Salmon Antitrust Litigation. *See* ECF No. 6. Defendants also requested sanctions under 28 U.S.C. § 1927, claiming Vita's filing in Massachusetts was somehow improper. *Id*.

On July 1, 2025, this Honorable Court ruled that Stephen J. Teti, Esq. was "an employee, not a partner, of [LGN]," therefore making his citizenship irrelevant for purposes of diversity analysis and finding there existed "complete diversity" between the parties. *See Order* ECF No. 22. Said Order, lifted the stay on the defendants' motion to transfer which is now at issue in these instant filings[2].

## III.    THE REFERRAL FEE AGREEMENT IS A SEPARATE CONTRACT NOT SUBJECT TO THE FLORIDA COURT'S RETAINED JURISDICTION

Defendants argue that this case should be transferred to the Southern District of Florida, claiming the Florida Court retained jurisdiction over disputes

---

[2] Respectfully, it bears noting that the record may still be inadequate to fully satisfy the standard articulated in *BRT Mgmt. LLC v. Malden Storage LLC, 68 F.4th 691 (1st Cir. 2023)*, which held "[i]t is clear in this circuit that an LLC is subject to this rule and takes the citizenship of all of its members. Pramco, 435 F.3d at 54–55. If the members are themselves unincorporated associations, then those members' citizenships are relevant too; the process is "iterative," and a party must "trace the citizenship of any member that is an unincorporated association through however many layers of members or partners there may be." Parties cannot establish federal subject matter jurisdiction merely by agreeing that the basis for jurisdiction is satisfied. See Wis. Dep't of Corr. v. Schacht, 524 U.S. 381, 389, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998) ("The presence of [a] nondiverse party automatically destroys original jurisdiction: No party need assert the defect. No party can waive the defect or consent to jurisdiction."); Am. Fiber & Finishing, Inc. v. Tyco Healthcare Grp., LP, 362 F.3d 136, 139 (1st Cir. 2004) ("[P]arties cannot confer subject matter jurisdiction on a federal court 'by indolence, oversight, acquiescence, or consent.'" (quoting United States v. Horn, 29 F.3d 754, 768 (1st Cir. 1994))).

related to the allocation of attorneys' fees in the Salmon Antitrust Litigation. This argument misconstrues Plaintiff's claims, which concerns a separate referral fee arrangement with LGN, distinct from the fee allocation process overseen by the Florida Court. The referral fee dispute falls outside the scope of the Florida Court's retained jurisdiction, making transfer unwarranted.

### A. The Scope of the Florida Court's Jurisdiction.

The Florida Court's Settlement Order retains jurisdiction over "any suit, action, proceeding or dispute arising out of or relating to this Settlement Agreement or the applicability of the Settlement Agreement, or relating to the award of fees and expenses and any allocation thereof." Salmon Antitrust Litigation, ECF No. 352 ¶ 24. Vita's agreement is distinct from the "allocation" of fees. Allocation of fees refers to the division of the court-awarded attorneys' fees among counsel in the litigation for each law firm's service. In this instance, Plaintiff's private referral agreement was a separate agreement fixed at fifteen percent (15%) of the fees earned and awarded. This private contract does not involve Vita attempting to make a change or dispute about the Florida Court's allocation of attorney fees or the total fee award among class counsel.

### B. There exists a distinction between referral fees and allocations.

Referral fees are private contracts, separate from court-overseen fee allocations. Defendant cites to *Andujar v. Gen. Nutrition Corp.* in their motion; however, the court in *Andujar* held that a referral fee is "a cost counsel voluntarily incurred" and "irrelevant to the Court's decision" on the fee award, emphasizing

that "the amount of the statutory fee award should not be dependent on how plaintiff allocated his fee." *Andujar v. Gen. Nutrition Corp.*, No. CV 14-7696 (JS), 2018 WL 3999569, at *8 (D.N.J. Aug. 20, 2018). This directly supports Plaintiff's position that its referral fee agreement with LGN is a private matter and not subject to the Florida Court's Order retaining jurisdiction over *fee allocation*. Defendants' reliance on *Andujar* is misplaced, as it undermines their argument by distinguishing referral fees from court-awarded fees.

Defendants also cite *In re Libor-Based Fin. Instruments Antitrust Litig.*, where the court retained jurisdiction over "all amounts paid as referral fees to other law firms, as well as accrued interest thereon." In re Libor-Based Fin. Instruments Antitrust Litig., No. 12-CV-5822 (NRB), 2020 WL 7121854, at *1 (S.D.N.Y. Oct. 5, 2020). This case is distinguishable because the *Libor* order explicitly included "referral fees" within its jurisdictional scope, likely due to a specific concern about fee payments in that settlement. *Id*. In contrast, the Florida Court's order in the Salmon Antitrust Litigation omits *any* mention of referral fees – a sure indication that only disputes directly tied to the settlement agreement or the allocation of the court-awarded fees fell within its purview.

1. **Some jurisdictions mandate disclosure of referral fees in class actions; however, the Southern District of Florida does not.**

The Southern District of New York, as example, imposes one of the clearest mandates for disclosing referral fees in fee allocations. See Local Civil Rule 23.1 (S.D.N.Y.). The Southern District of New York's Local Rule 23.1 requires the disclosure of "any fee sharing agreements with *anyone*," in relation to the award of

8

fees by the Court in a class action, which also suggests the Court's jurisdiction over such agreements. In re Adelphia Commc'ns Corp. Sec. & Derivative Litig., No. 03 MDL 1529 LMM, 2011 WL 1044156, at *2 (S.D.N.Y. Mar. 16, 2011) (emphasis added).

If the Southern District of Florida had intended to retain jurisdiction over disputes concerning referral fee agreements, it would have done so explicitly – more so in light of the fact that there is no Local Rule similar to that of the Southern District of New York requiring they be disclosed in the first place. Cf. In re Libor-Based Fin. Instruments Antitrust Litig., No. 12-CV-5822 (NRB), 2020 WL 7121854, at *1 (S.D.N.Y. Oct. 5, 2020) (where the court expressly retained jurisdiction over "referral fees"). The absence of any comparable requirement in the Southern District of Florida supports the conclusion that the Florida Court did not intend to retain jurisdiction over a separate breach of contract claim arising from a private referral fee agreement – more than a thousand miles away – and collateral to the settlement.

## C. If Defendants considered Vita's claims as 'fee allocation' they were obligated to disclose it to the Southern District of Florida.

Lead counsel in class actions are responsible for ensuring that the total fee award is reasonable and that allocations among litigation counsel are fair. Here, Silton, as co-lead counsel, did not disclose the referral fee agreement to the Florida Court during the Salmon Antitrust Litigation settlement process, despite Vita's demands beginning as early as April 5, 2023, whether post-settlement or not. Additionally, Isquith, also co-lead counsel, paid a referral fee to Vita independently,

9

without court disclosure, further indicating that such agreements were separate
from the settlement process. To pose an analytical question: if Defendants
considered the referral fee to fall within the court's fee allocation, and thus, subject
to its jurisdiction pursuant to the settlement order, why was it not disclosed to the
Florida Court? Defendants' silence during settlement conferences, demand letter
responses, and mediation suggests they treated the agreement as a private contract
dispute, not a dispute over allocation of fees subject to the Florida Court's
jurisdiction. Indeed, Defendants, despite their co-lead role over the class in the
Salmon Antitrust Litigation, and receiving Vita's demand in April 2023, remained
*silent* even through their Motion for Disbursement of Funds more than a year later
on June 24, 2024. *See* ECF No. 362 (Amended Motion for Disbursement of Funds)
and ECF No. 363 (Order Granting Motion for Disbursement of Funds). Further
indication that they did not see the matter as a dispute as to "fee allocation" but
rather a referral fee dispute among counsel.

## IV.    DEFENDANTS' FURTHER ARGUMENTS FOR TRANSFER ARE UNAVAILING

The defendants in this instance seek an intra-district transfer to the
Southern District of Florida pursuant to 28 U.S.C. § 1404(a) arguing that the
Florida Court retained jurisdiction of any "any suit, action, proceeding, or dispute,"
of the "award of fees and expenses and any allocation thereof." See Salmon
Antitrust Litigation ECF No. 352 at 9 ¶ 24.  Courts have held that, "[a]bsent a
forum-selection clause, the 28 U.S.C. § 1404(a) (or forum non conveniens) analysis
involves an evaluation of both the convenience of the parties and various public-

interest considerations." *Rome v. McNally*, 718 F. Supp. 3d 118 at 121, 122 (D. Mass. 2024) (quoting *Kurra v. Synergy Comput. Sols., Inc.*, No. 15-cv-13952-ADB, 2016 U.S. Dist. LEXIS 127248, 2016 WL 5109132, at *7 (D. Mass. Sept. 19, 2016) (Burroughs, J.) (citing *Atlantic Marine Constr. Co. v. United States* Dist. Court for W. Dist. of Tex., 571 U.S. 49, 54, 134 S. Ct. 568, 187 L. Ed. 2d 487 [*122] (2013) (quoting 28 U.S.C. § 1404(a))). Vita, a Massachusetts professional corporation with its principal place of business in Boston, chose to file this action in Suffolk Superior Court. Vita's choice of Massachusetts as the forum is entitled to substantial deference by this court because it is both Vita's home forum, the place where the referral agreement was formed and where the original plaintiffs in the underlying Salmon Antitrust Litigation were referred from. See *Nowak v. Tak How Invs., Ltd.,* 94 F.3d 708, 718 (1st Cir. 1996) (strong presumption in favor of plaintiff's forum choice). "In *Nowak,* the First Circuit quoted the Supreme Court's decision in *Koster v. Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 524, 67 S.Ct. 828, 91 L.Ed. 1067 (1947) for the proposition that a plaintiff should not be deprived of the advantages of its own choice of jurisdiction except upon a clear showing of facts which either "(1) establish such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiffs convenience, which may be shown to be slight or nonexistent, or (2) make trial in the chosen forum inappropriate because of considerations affecting the *22 court's own administrative or legal problems." 94 F.3d at 720." *Veryfine Prods., Inc. v. Phlo Corp.*, 124 F. Supp. 2d 16, 21–22 (D.

Mass. 2000). Defendants have not shown such a compelling reason for transfer to the Southern District of Florida as discussed further below.

## A. Interest of Justice Does Not Favor Transfer

Defendants argue that public interest factors – specifically judicial economy and the Florida Court's retained jurisdiction – favor transfer. However, the Florida Court retained jurisdiction only over the allocation of attorneys' fees, not over referral fee disputes which are separate contractual agreements. Defendants fail to persuade how transferring this case would promote judicial economy.

### 1.    Judicial Economy

This Honorable Court can efficiently adjudicate this case, which primarily involves a contract dispute and related claims under Massachusetts law. The underlying Salmon Antitrust Litigation's complexity does not bear directly on this case, which concerns a separate agreement between Vita and Defendants. The key issues – whether an agreement existed, its terms, and whether it was breached – are standard contract law questions that do not require the Florida Court's familiarity with the Salmon Antitrust Litigation. Defendants fail to state how transferring the case would significantly enhance the efficiency of a contract claim. In reality, transfer would likely delay proceedings by requiring a new court to familiarize itself with this distinct dispute and apply applicable Massachusetts law.

12

2.    **Massachusetts Law is Applicable in this Instance**

    a. **Plaintiff has alleged violations of M.G.L. c. 93A which are nuanced in Massachusetts.**

The Complaint includes claims under Massachusetts law, notably violations

of M.G.L. c. 93A § 11, which addresses unfair and deceptive practices. *See* Plaintiff's

Complaint, ECF No. 1 at 11 ¶¶ 45-48. Massachusetts is better positioned to apply

its own state law, particularly for statutory claims like c. 93A, which involve

nuanced interpretations and if successful warrant treble damages and attorney

fees. Chapter 93A authorizes multiple damages of two to three times a plaintiff's

"actual damages". Kraft Power Corp. v. Merrill, 464 Mass. 145, 157, 981 N.E.2d 671,

684 (2013). The imposition of multiple damages is "designed to impose a penalty …

that varies with the culpability of the defendant." *International Fid. Ins. Co. v.*

*Wilson,* 387 Mass. 841, 856, 443 N.E.2d 1308 (1983). "Like other statutes containing

multiple damage provisions, [G.L. c. 93A, §§ 9 and 11,] reflect 'the Legislature's

displeasure with the proscribed conduct and its desire to deter such conduct.' " *Id.* at

857, 443 N.E.2d 1308, quoting *McGrath v. Mishara,* 386 Mass. 74, 85, 434 N.E.2d

1215 (1982). See *Haddad v. Gonzalez,* 410 Mass. 855, 869, 576 N.E.2d 658 (1991)

("It is established that deterrence is an important goal of the multiple damages

provisions of c. 93A").

    b. **Massachusetts is a pure referral fee state and the referral fee need not be in writing.**

The Massachusetts Appeals Court has said oral contracts are as enforceable

as written contracts so long as they are not barred by the Statute of Frauds.

Brewster Wallcovering Co. v. Blue Mountain Wallcoverings, Inc., 68 Mass. App. Ct.

13

582, 599 n.40, 864 N.E.2d 518, 534 n.40, 62 U.C.C. Rep. Serv. 2d 552 (2007). In

Massachusetts, an oral fee-sharing agreement is not unenforceable under the

Statute of Frauds for failure to be reduced to writing and signed by attorneys, given

that Statute of Frauds exempted fee-sharing agreements between attorneys.

M.G.L.A. c. 259, § 7. See Saggese v. Kelley, 445 Mass. 434, 837 N.E.2d 699 (2005).

In the absence of an express agreement, an implied contract may be inferred from

(1) the conduct of the parties and (2) the relationship of the parties. Vita v. Berman,

Devalerio & Pease, LLP, 81 Mass. App. Ct. 748, 967 N.E.2d 1142 (2012). An implied

contract requires proof that there was a benefit to the defendant, plaintiff expected

the defendant to pay for that benefit, and the defendant expected, or a reasonable

person should have expected, that he or she would have to pay for that benefit. *Id.*

In an ordinary contract, where matters are left open, the court may imply terms

either that are reasonable or that may be gathered from the subsequent course of

performance. *Id*. (citing Restatement (Second) of Contracts § 202(4)).

Retaining this case in Massachusetts prevents unnecessary delays of the

Florida Court's analysis and research in applying a foreign state's law.

Massachusetts contract law recognizes the validity of oral referral fee agreements.

Transferring to the Southern District of Florida risks misapplication of Florida's

Rule 4-1.5(g), which requires written agreements for contingent fee referrals,

potentially prejudicing Vita's claim. See Halberg v. W.M. Chanfrau, P.A., 613 So. 2d

600, 602 (Fla. Dist. Ct. App. 1993), F.S.A Bar Rule 4-1.5. The Massachusetts-based

nature of the agreement, clients, and breach further ties this dispute to

14

Massachusetts, where the court is best equipped to interpret and apply these rules. Despite Defendants' contentions, transfer would actually undermine judicial economy and Vita's right to pursue its claim under the correct legal standard. See _Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 718 (1st Cir. 1996)_ (plaintiff's choice of forum merits deference).

### c. Daynard, a case from this jurisdiction, further supports keeping this matter in Massachusetts.

In _Daynard_, a law professor, putatively an expert on tobacco litigation, sued in Massachusetts Superior Court, a law firm that utilized his expertise to win massive settlements for its clients, seeking to enforce an oral fee-splitting agreement. Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 188 F. Supp. 2d 115 (D. Mass. 2002). The defendant firm removed the suit from the Superior Court to the Federal Court and subsequently moved for summary judgment. The District Court, Young, Chief Judge, held that: (1) Massachusetts law governed the dispute, and (2) the alleged agreement, even if made in contravention of the rules of professional conduct, was nonetheless enforceable. _Id_[3].

Similarly, in that action, the Defendants sought to transfer the action from Massachusetts to Mississippi and the Court rejected said argument. _Id._ at 77. _Daynard_ affirmed the enforceability of oral agreements under Massachusetts law.

---

[3] Under Massachusetts law, an alleged imperfect fee agreement between a law professor and a law firm involved in tobacco litigation, entered into without notification to clients, in violation of Massachusetts and New York ethics requirements, would be enforceable on its own terms; Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 188 F. Supp. 2d 115 (D. Mass. 2002)

The *Daynard* rulings and decision from the First Circuit, underscore that court should respect a Massachusetts plaintiff's choice of forum, especially where Massachusetts law governs the dispute. See <u>Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42 (1st Cir. 2002)</u>.

## B. Convenience Factors Do Not Favor Transfer to Florida

Defendants assert that private interest factors – convenience of the parties and witnesses and access to proof – do not oppose transfer. ECF No. 7 at 9. However, these factors either favor Massachusetts or at the least are neutral, supporting denial of the Defendants' motion.

Vita is headquartered in Massachusetts, while the Defendants are based in Minnesota (LGN is a Minnesota partnership and Silton resides in Minnesota). Transferring the case to the Southern District of Florida would not enhance convenience, as Florida does not appear to be the residence of *any* party. Moving the case would impose additional travel burdens on Vita without providing a corresponding benefit to the Defendants, who would still need to travel from Minnesota. Thus, this factor weighs against transfer.

### 1.    Convenience of the Witnesses Do Not Favor Transfer to Florida

The key witnesses in this case include Vita's principal, Richard J. Vita (Massachusetts), LGN attorneys (Minnesota), and Fred T. Isquith, Sr (New York). These witnesses are geographically dispersed, with no concentration at or near Florida. Massachusetts is as convenient as Florida for these witnesses, if not more so, given its proximity to New York (approximately 200 miles from Boston to New

York City, versus 1,200 miles from New York to Southern District of Florida). For
non-party witnesses like Isquith, whose testimony may be critical to the referral
agreement's formation, Massachusetts is a more accessible venue. Courts prioritize
the convenience of non-party witnesses, and this factor supports denial of the
motion to transfer to Florida. Veryfine Prods., Inc. v. Phlo Corp., 124 F. Supp. 2d 16,
24 (D. Mass. 2000).

2.    **Location of Evidence Does Not Favor Transfer to Florida**

Defendants argue that the location of documents is irrelevant due to
electronic discovery. Plaintiff agrees, as modern technology allows evidence to be
accessed from any jurisdiction. There is no indication that critical evidence is
uniquely located in Florida and the Defendants have failed to identify any evidence
that would necessitate transfer. This factor does *not* support transfer. "Because this
is primarily a contract claim, the documents appear to be in the possession of both
parties and thus the relative convenience of an alternative forum is negligible."
Veryfine Prods., Inc. v. Phlo Corp., 124 F. Supp. 2d 16, 26 (D. Mass. 2000).

V.    **DEFENDANTS' REQUEST FOR COSTS FOR REMOVAL AND
TRANSFER PROCEEDINGS IS WITHOUT MERIT**

Defendants seek sanctions under 28 U.S.C. § 1927, alleging that Plaintiff's
counsel unreasonably multiplied proceedings by filing in Massachusetts,
necessitating removal and transfer proceedings. This request lacks merit, as
Plaintiff's actions were reasonable, prudent (to avoid jurisdictional quagmire
discussed above), and made in good faith to ensure a proper forum for its claims.
The Court should deny Defendants request for costs.

17

### A.  Standard for Sanctions Under §1927

Under 28 U.S.C. § 1927, an "attorney … who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C.A. § 1927 (West). An attorney's conduct is "vexatious" when it is objectively harassing or annoying, regardless of whether it is intended to be so; sanctioned conduct must be more severe than mere negligence. Cruz v. Savage, 896 F.2d 626 (1st Cir. 1990). Before sanctions may be imposed under inherent power doctrine, court requires clear evidence that challenged actions were entirely without color and taken for improper purposes such as harassment or delay, and high degree of specificity in district court's factual findings. Bowler v. U.S. I.N.S., 901 F. Supp. 597 (S.D.N.Y. 1995).

### B.  Plaintiff's actions were reasonable and in good faith.

Plaintiff acted prudently throughout the procedural history of this case. Vita's initial action (Vita I) was voluntarily dismissed due to concerns about diversity jurisdiction, specifically the citizenship of Stephen J. Teti, a non-equity partner at LGN[4]. The decision was a strategic one and informed by the First

---

[4] The fact Mr. Teti is a non-equity partner at LGN was not readily available to counsel at the time of filing or its voluntarily dismissal. In any event, whether a non-equity partner constitutes a 'member' of an unincorporated entity for purposes of diversity jurisdiction remains unsettled among district courts. See e.g., EQT Prod. Co. v. Vorys, Sater, Seymour & Pease, LLP, No. 6:15-CV-146-REW-EBA, 2018 WL 6790486, at *6 (E.D. Ky. Dec. 26, 2018) (finding the Court lacked subject-matter (diversity) jurisdiction because a non-equity partner counted for diversity purposes).

Circuit's stringent requirements in *BRT Management LLC*, which vacated a judgement after six years due to inadequate proof of diversity, emphasizing the need for meticulous jurisdictional analysis. Vita's caution was justified, as this Court itself *sua sponte* questioned the diversity jurisdiction upon removal, requiring Defendant's to clarify Teti's status. See Order, ECF No. 9 (May 30, 2025); ECF No. 22 (July 1, 2025) (finding diversity after the Defendants' response to the Order to Show Cause).

Vita's subsequent filing in Massachusetts Superior Court was a legitimate strategic choice to pursue its claims and an act of prudence to avoid any jurisdictional mishaps. Defendants' decision to remove the case to this Court on May 28, 2025, was their own, not a consequence of improper conduct by Vita. Similarly, Defendants' motion to transfer to the Southern District of Florida (ECF No. 6, 7, 8) reflects a strategic preference guised as requirement of this Court, which they now seek costs for.

Defendants have failed to show that Vita's counsel acted unreasonably or vexatiously under 28 U.S.C. § 1927. Vita's act of caution and strategic decision to dismiss his original complaint (Vita I) and refile in Massachusetts Superior Court were prudent responses to legitimate jurisdictional concerns. Defendants' removal and transfer motions were their own choices, not necessitated by improper conduct.

## VI.    CONCLUSION

For the foregoing reasons, this Court should *deny* Defendants' motion to transfer. The referral fee dispute at issue arises from a private agreement governed

19

by Massachusetts law, made by a Massachusetts attorney, and involving Massachusetts-based referred clients. It is independent of the Salmon Antitrust Litigation's fee allocation and falls outside the Florida Court's retained jurisdiction. Defendants' obligations to disclose all fee allocations, and their silence on the matter, reinforces that they also viewed this matter as a referral fee dispute and separate from the Florida Court's retained jurisdiction over fee allocation.

Massachusetts law not only recognizes such oral agreements, but it also provides well-established framework for enforcing them, as affirmed in *Daynard* and other controlling precedent. Transfer would delay adjudication, create unnecessary complexity, and risk misapplication of law. The interest of justice and convenience of the parties strongly favor retaining the case in this forum. The motion for sanctions is equally unmerited and should be denied. Plaintiff respectfully requests that the Court deny the motion to transfer and set a schedule for Defendants to respond to the Complaint.

Respectfully submitted,

VITA LAW OFFICES, P.C.,
Plaintiff,
By its attorney,

/s/ Christopher M. Cervantes
Christopher M. Cervantes, BBO# 694813
Cervantes Law, P.C.
100 State Street, Suite 900
Boston, MA 02109
Tel: (617) 997-4425
Email: CMC@CCervantesLaw.com

Dated: July 22, 2025

20

## CERTIFICATE OF SERVICE

I certify that on July 22, 2025, this document was filed through the CM/ECF system, which will send notification to all counsel of record, and paper copies will be sent to non-registered participants.

*/s/ Christopher M. Cervantes*